# IN THE SUPREME COURT OF IOWA

No. 111 / 04-0843

Filed December 15, 2006

**JOHN A. KLINGE**,

Appellee,

vs.

**KEVIN BENTIEN**,

Appellant.

---

Appeal from the Iowa District Court for Clayton County, J.G. Johnson, District Associate Judge.

Appellant appeals district court's denial of his motion to dismiss. **REVERSED AND REMANDED FOR DISMISSAL.**

Reed H. Glawe of Gislason & Hunter, New Ulm, Minnesota, for appellant.

John A. Klinge, Farmersburg, pro se, appellee.

**STREIT, Justice.**

Ambrose Bierce once described litigation as "[a] machine which you go into as a pig and come out of as a sausage."[1]  This adage is certainly true in the present case.  Two pig farmers attempting to resolve their contract dispute in small claims court, ended up in district court and now our court.  Because mediation of farm disputes is mandatory, the decision of the small claims court is void.  We reverse and remand for dismissal without prejudice.

## I.    Facts and Prior Proceedings

John Klinge and Kevin Bentien entered into an oral contract concerning the raising and feeding of pigs.  Bentien purchased feeder pigs and placed them at Klinge's farm to be cared for until they reached market weight.  Klinge sued Bentien in small claims court for $3000 claiming he was not fully compensated under the terms of the contract.  Bentien countersued for $5000 alleging Klinge's negligence killed 100 pigs.  Neither party requested mediation under Iowa Code chapter 654B before the commencement of the action or any time thereafter.

The parties appeared before the small claims court for trial.  Neither party was represented by counsel.  The small claims court ruled in favor of both parties.  The court ordered a judgment be entered in favor of Klinge against Bentien in the amount of $3000.  Likewise, the court ordered a judgment be entered in favor of Bentien against Klinge in the amount of $5000.

Klinge appealed the judgment against him to the Clayton County District Court.  Bentien did not appeal the judgment against him.  Again, neither party was represented by counsel.  The district court requested

---

[1]Abrose Bierce, *The Devil's Dictionary* 79 (2003).

"written statements" from both parties. Based upon those statements, the district court found insufficient evidence to support either claim. It found the small claims court "should have dismissed both the claim and the counterclaim." However, since Bentien did not appeal the judgment against him, the district court held the $3000 judgment "must stand." Consequently, the district court only reversed the small claims court with respect to Bentien's claim against Klinge.

Shortly after the ruling, Bentien consulted an attorney for the first time about this case. The next day, Bentien's attorney sent a letter to the district court along with a copy to Klinge. The purpose of the letter was to bring chapter 654B of the Iowa Code to the court's attention. Bentien's attorney represented to the court chapter 654B required the parties in this case to submit to mediation before filing suit. *See* Iowa Code § 654B.3 (2005). Since neither party requested mediation, the attorney reasoned the court "lacks jurisdiction." "[I]n light of this new information," the attorney requested the court to dismiss the matter "ab initio with respect to both parties."

In response, the district court sent a letter to Bentien's attorney and a copy was sent to Klinge. It first noted neither party raised the issue of mediation in small claims court or on appeal to the district court. The court then refused "to take any further action with regard to this case."

Bentien applied for discretionary review, which this court granted. On appeal, Bentien seeks the reversal of the district court's ruling as well as the dismissal of both Klinge's and Bentien's claims without prejudice on the basis both the small claims court and the district court lacked subject matter jurisdiction and/or authority to hear either claim.

Alternatively, Bentien alleges the district court made "several errors in the assessment of the record on appeal and in not allowing the parties to submit additional evidence." Because we hold both courts lacked subject matter jurisdiction, we need not determine whether the district court properly reviewed the evidence.

## II. Standard of Review

A "court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it." *Tigges v. City of Ames*, 356 N.W.2d 503, 512 (Iowa 1984) (citing *Walles v. Int'l Bhd. of Elec. Workers*, 252 N.W.2d 701, 710 (Iowa 1977)). Our scope of review of rulings on subject matter jurisdiction is for correction of errors at law. *Id.*

## III. Merits

### A. Subject Matter Jurisdiction versus Lack of Authority

The issue before us is whether Klinge's failure to file a request for mediation with the farm mediation service as required by section 654B.3 deprives the small claims court of subject matter jurisdiction. Subject matter jurisdiction is the power "'of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.'" *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989) (quoting *Wederath v. Brant*, 287 N.W.2d 591, 594 (Iowa 1980)). Subject matter jurisdiction is conferred by constitutional or statutory power. *In re Estate of Falck*, 672 N.W.2d 785, 789 (Iowa 2003) (citing *Hutcheson v. Iowa Dist. Ct.*, 480 N.W.2d 260, 263 (Iowa 1992)). The parties themselves cannot confer subject matter jurisdiction on a court by an act or procedure. *Id.* (citing *In re Estate of Dull*, 303 N.W.2d 402, 406 (Iowa

1981)).   Unlike personal jurisdiction, a party cannot waive or vest by consent subject matter jurisdiction.  *Id.* (citing *In re Estate of Dull*, 303 N.W.2d at 406).

Lack of subject matter can be raised "at any time."  *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) (citing *State v. Ryan*, 351 N.W.2d 186, 187 (Iowa 1984)).  If a court enters a judgment without jurisdiction over the subject matter, the judgment is void and subject to collateral attack.  *In re Estate of Falck*, 672 N.W.2d at 789 (citations omitted); *see, e.g.*, *Rosenberg v. Jackson*, 247 N.W.2d 216, 218 (Iowa 1976) (setting aside a four-year-old default judgment because the court lacked "jurisdiction").

Since *Christie*, we have been careful to distinguish between subject matter jurisdiction and a court's authority to hear a particular case.  *See, e.g.*, *In re Estate of Falck*, 672 N.W.2d at 789–90; *Fed. Am. Int'l, Inc. v. Om Namah Shiva, Inc.*, 657 N.W.2d 481, 484–85 (Iowa 2003); *In re Marriage of Seyler*, 559 N.W.2d 7, 10 n.3 (Iowa 1997); *Mandicino*, 509 N.W.2d at 482.  In *Christie*, we said:

> A court may have subject matter jurisdiction but for one reason or another may not be able to entertain the particular case.  In such a situation we say the court lacks authority to hear that particular case.  Sometimes we have referred to "lack of authority to hear the particular case" as lack of jurisdiction of the case.

*Christie*, 448 N.W.2d at 450.

The significance of this distinction becomes evident when issues of waiver arise.  In contrast to subject matter jurisdiction, "a court's lack of authority is not conclusively fatal to the validity of an order."  *In re Marriage of Seyler*, 559 N.W.2d at 10 n.3.  Consequently, an order entered without authority is voidable rather than void.  *In re Estate of*

*Falck*, 672 N.W.2d at 790. "Thus if a party waives the court's [lack of] authority to hear a particular case, the judgment becomes final and is not subject to collateral attack." *Id.*; *see Mandicino*, 509 N.W.2d at 483 ("[W]here subject matter jurisdiction exists, an impediment to a court's *authority* can be obviated by consent, waiver or estoppel.").

**B.      Mandatory Mediation Proceedings Under Section 654B.3**

We now turn to section 654B.3. Bentien argues section 654B.3 applies to the present case. He alleges the small claims court did not have subject matter jurisdiction because Klinge failed to satisfy the requirements set forth in section 654B.3(1). Section 654B.3 provides:

> A person who is a farm resident, or other party, desiring to initiate a civil proceeding to resolve a dispute, *shall* file a request for mediation with the farm mediation service. The person *shall not* begin the proceeding until the person receives a mediation release . . . .

Iowa Code § 654B.3(1)(*a*) (emphasis added).

Before addressing the issue of subject matter jurisdiction, we must determine whether this provision in fact applies to the present case. According to the statutory definitions, a "dispute" is a "controversy between a person who is a farm resident and another person which . . . relates to . . . [t]he performance of either person under a care and feeding contract, if both persons are parties to the contract." *Id.* § 654B.1(2)(*a*). A "farm resident" is a "person holding an interest in farmland, in fee, under a real estate contract, or under a lease, if the person manages farming operations on the land." *Id.* § 654B.1(5). An "other party" is a "person having a dispute with a farm resident." *Id.* § 654B.1(8). And finally, a "care and feeding contract" is "an agreement, either oral or written, between a farm resident and the owner of livestock, under which

the farm resident agrees to act as a feeder by promising to care for and feed the livestock on the farm resident's premises." *Id.* § 654B.1(1).

In the present case, it is undisputed both parties are farmers and Bentien's pigs (the subject of the contract) were kept at Klinge's farm. Klinge is a "farm resident" and the contract at issue is a "care and feeding contract." Since the parties' dispute involves a "care and feeding contract," we find section 654B.1 is applicable. Thus, Klinge was required to file a mediation request and receive a mediation release before filing this suit in small claims court.

### C. Consequences for Failing to Request Mandatory Mediation

Bentien argues Klinge's failure to file a mediation request and receive a mediation release deprived the small claims court of subject matter jurisdiction. We treat Bentien's letter to the district court as a motion to dismiss. *Halverson v. Iowa Dist. Ct.*, 532 N.W.2d 794, 799 (Iowa 1995) (noting failure to attach a label to a motion does not determine its legal significance because "we look to the motion's content to determine the motion's real nature"). We must decide whether it was error not to dismiss both claims.

In 1999, a federal district court examined section 654B.3. *Rutter v. Carroll's Foods of the Midwest, Inc.*, 50 F. Supp. 2d 876, 881–82 (N.D. Iowa 1999). Because neither appellate court in Iowa had passed on the question of whether obtaining a mediation release under chapter 654B is a matter of subject matter jurisdiction or authority, the court in *Rutter* predicted how this court would interpret section 654B.3. *Id.* at 882. Instead of using our terminology, the court in *Rutter* used "jurisdictional prerequisite" to refer to subject matter jurisdiction and "condition

precedent" to refer to the authority of a court to hear a case. *Id.* The court concluded obtaining a mediation release under chapter 654B

> is a "condition precedent" to suit, *not a jurisdictional prerequisite.* As such, the defect of failing to obtain such a release does not affect the claimant's standing or the subject matter jurisdiction of the court, but is instead curable after suit has been filed.

*Id.* at 882–83 (emphasis added). As a result, the court stayed the case in order for the plaintiffs to attempt to cure the defect. *Id.* at 883. We see the merit in our learned friend's conclusion, although we would have articulated the issue as a matter of the court's authority to hear the particular case rather than a condition precedent to suit.

However, in 2000 the legislature amended section 654B.3 by stating that filing a mediation request and obtaining a mediation release "are jurisdictional prerequisites to a person filing a civil action . . . to resolve a dispute subject to this chapter." 2000 Iowa Acts ch. 1129, § 2 (codified at Iowa Code § 654B.3(1)(*b*)).

The timing of the amendment, the use of the federal court's term "jurisdictional prerequisites," and the introductory statement to the bill indicate the legislature intended a different result than that of the *Rutter* decision. When interpreting a statute, we are obliged to examine both the language used and the purpose for which the legislation was enacted. *Fjords North, Inc. v. Hahn,* 710 N.W.2d 731, 739 (Iowa 2006) (citing *Albrecht v. Gen. Motors Corp.,* 648 N.W.2d 87, 89 (Iowa 2002) ("We seek to interpret statutes consistently with their language and purpose, and avoid interpretations that are unreasonable.")). The explanation accompanying the introduced version of the amendment sheds light on the legislature's intention. It states:

> This bill amends the mandatory mediation provisions of two Code sections relating to resolution of farm disputes. The bill specifies that the mediation requirements in Code sections 654A.6 and 654B.3 are jurisdictional prerequisites that must be satisfied before a case can be filed under the chapters. A 1999 federal district court ruling held that the current Code language did not prevent the filing of a suit under chapter 654B prior to mediation of the dispute.

H.F. 2521; *see City of Cedar Rapids v. James Properties, Inc.*, 701 N.W.2d 673, 677 (Iowa 2005) ("We give weight to explanations attached to bills as indications of legislative intent."). It is obvious from this explanation the legislature intended to respond to *Rutter.  See id.* (citing *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425–26 (Iowa 2002) ("[A]n amendment to a statute raises a presumption that the legislature intended a change in the law.")).

> The polestar of statutory interpretation is to give effect to the legislative intent of a statute. We "consider the objects sought to be accomplished and the evils and mischiefs sought to be remedied, seeking a result that will advance, rather than defeat, the statute's purpose."

*State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999) (citations omitted). We must conclude the legislature intended obtaining a mediation release from the farm mediation service to be a prerequisite to subject matter jurisdiction. Klinge's failure to file a mediation request and obtain a mediation release before filing his claim deprived the small claims court of subject matter jurisdiction.[2] As a result, both the small claims court order and the district court's decision are void. The district court should have granted Bentien's motion to dismiss.

---

[2]The legislature may create jurisdictional prerequisites to subject matter jurisdiction. In this case, the parties are not deprived of their day in court. The legislature has merely made a policy decision that farm disputes shall be mediated before a suit is filed.

**IV.  Conclusion**

Section 654B.3 requires a "farm resident" to file a request for mediation with the farm mediation service and obtain a mediation release before filing suit if the matter involves a livestock "care and feeding contract."  Because Klinge failed to satisfy these requirements before filing suit, the small claims court lacked subject matter jurisdiction to hear his claim and Bentien's counterclaim.  Consequently, both the decision of the small claims court and the decision of the district court on review are void.

**REVERSED AND REMANDED FOR DISMISSAL.**

All justices concur except Appel, J., who takes no part.