# IN THE COURT OF APPEALS OF IOWA

No. 22-0335
Filed March 8, 2023

**DAVID MYERS,**
        Plaintiff-Appellant,

**vs.**

**TRENT LINKENMEYER and LINKENMEYER FAMILY FEEDERS,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Howard County, Alan Heavens,

Judge.

        Plaintiff appeals a district court ruling dismissing his petition for lack of

subject matter jurisdiction. **AFFIRMED.**

        Kevin E. Schoeberl of Story, Schoeberl & Seebach, L.L.P., Cresco, for

appellant.

        Jason T. Madden and Brandon M. Hanson of Bradshaw, Fowler, Proctor &

Fairgrave, P.C., Des Moines, Eldon McAfee of Brick Gentry, P.C., West Des

Moines, and Andrew F. Van Der Maaten of Anderson, Wilmarth, Van Der Maaten,

Belay, Freitheim, Gipp, Evelsizer Olson, Lynch & Zahasky, Decorah, for appellees.

        Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

David Myers appeals a district court ruling that dismissed his petition against Trent Linkenmeyer and Linkenmeyer Family Feeders for lack of subject matter jurisdiction because of his failure to request farm mediation under Iowa Code section 654B.3(1) (2021). Myers contends the court erred in (1) finding that provision applied to his claims and (2) denying his request for a stay. We affirm.

## I.      Background Facts and Proceedings

In a petition filed on September 28, 2021, and amended the next day, David Myers alleged that five years earlier, he found dead and gasping fish in a pond located on his property. The water in the pond "was very brown and had a manure odor." The day before Myers found the fish, Trent Linkenmeyer and Linkenmeyer Family Feeders (collectively Linkenmeyer) applied manure to a field north of the pond. A complaint was made to the Iowa Department of Natural Resources on the same day the fish were discovered. The department immediately investigated the report and "concluded the manure from the nearby application on a field owned and operated by [Linkenmeyer] was actively discharging into the tributary of the Wapsipinicon River that subsequently flowed into Myers['s] pond."

Based on these factual allegations, Myers's petition asserted claims of negligent use of adjoining premises, nuisance, waste, and trespass against Linkenmeyer. In early November, Linkenmeyer moved to dismiss the petition because Myers did not request mandatory mediation under Iowa Code section 654B.3(1). After a preliminary resistance to Linkenmeyer's motion, Myers asked for a stay so that a hearing could be held under section 654B.3(1)(a)(1) to determine whether the "time delay required for the mediation would cause [him] to

suffer irreparable harm."  Attached to the motion was a request for mandatory mediation that Myers made on December 9, more than two months after filing suit.

Following an unreported hearing, the district court granted Linkenmeyer's motion to dismiss and denied Myers's motion to stay.  In doing so, the court ruled:

> Myers was required by Iowa law to file a request for mediation before he filed his lawsuit.  His failure to do so is fatal to all of his claims because they are all based on the premise that the Defendants created a nuisance that in some way caused him harm.  And Iowa law is clear that the petition must be dismissed as opposed to granting additional time to complete farm mediation.

Myers appeals.

## II.     Standard of Review

"Ordinarily on motions to dismiss, the questions are legal and all well-pleaded facts are taken to be true in deciding the issue."  *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 564 (Iowa 2018).  But where the motion raises a question of subject matter jurisdiction, the district court may treat the motion as one for summary judgment and consider matters outside the pleadings.  *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 310 (Iowa 1982).  The court did not use that option here, instead confining itself to the pleadings.  We will do the same in reviewing the court's ruling for the correction of errors at law.  *See Mormann*, 913 N.W.2d at 565–66 (noting the alternative approaches available to reviewing a motion to dismiss).

## III.    Analysis

Before reaching the jurisdictional question presented in this appeal, we must first decide whether the mandatory mediation provisions of Iowa Code section 654B.3(1) apply.  *See Klinge v. Bentien*, 725 N.W.2d 13, 16 (Iowa 2006).

Myers argues that those provisions do not apply because (1) the petition does not "specifically address whether or not either of the parties meets the definition of '[f]arm [r]esident,'" and (2) the "dispute" between the parties involved more than a nuisance claim. Neither of these arguments holds water.

Section 654B.3(1)(a) provides that "[a] person who is a farm resident, or other party, desiring to initiate a civil proceeding to resolve a dispute, shall file a request for mediation with the farm mediation service. The person shall not begin the proceeding until the person receives a mediation release . . . ." A "farm resident" is "a person holding an interest in farmland, in fee, under a real estate contract, or under a lease, if the person manages farming operations on the land," including "a natural person, or any corporation, trust, or limited partnership as defined in section 9H.1." Iowa Code § 654B.1(5). And "'[o]ther party means any person having a dispute with a farm resident." *Id.* § 654B.1(8). Though the petition did not contain the words "farm resident," Myers did allege the manure was applied "on a *field owned and operated by the Defendants*," which we accept as true in reviewing Linkenmeyer's motion to dismiss. *See Mormann*, 913 N.W.2d at 564. Moreover, Myers's resistance to Linkenmeyer's motion did not really dispute that the controversy involved farm residents and, in fact, seemed to concede the point by requesting mandatory mediation after the suit was filed. So we find the "farm resident" requirement of section 654B.3(1)(a) was met.

Turning then to the "dispute" requirement, section 654B.1(2)(b) defines a "dispute" to include

> a controversy between a person who is a farm resident and another person, which arises from a claim eligible to be resolved in a civil proceeding in law or equity if the claim relates to . . . [a]n action of

one person which is alleged to be a nuisance interfering with the enjoyment of the other person.

Myers argues that because his petition alleged claims for negligent use of adjoining premises, trespass, and waste, which have elements that are "all distinct and separate actions from the common law action of [n]uisance," he was not required to mediate those claims. We agree with Linkenmeyer that the statute cannot be read so narrowly. *See Gannon v. Rumbaugh*, 772 N.W.2d 258, 262 (Iowa Ct. App. 2009) (noting that in enacting the provisions of chapter 654B, the legislature declared "that farm mediation should be expanded to include more disputes between farm residents and opposing parties" (quoting 1990 Iowa Acts ch. 1143, § 1)).

As is clear from its plain language, section 654B.1(2) is not limited to only nuisance claims but instead encompasses claims that "relate[] to" nuisance actions.[1] We agree with the district court that

> [i]f you removed the allegation that the Defendants caused a manure runoff into his pond, Myers no longer has a factual basis for his negligence, waste, and trespass claims. All of Myers'[s] claims triggered the pre-petition mediation requirement because they all stem from an allegation that the Defendants created a nuisance.

For instance, in support of his claim for negligent use of adjoining premises, Myers alleged "the manure runoff from [Linkenmeyer's] property and actions killed the fish in [Myers's] pond." And for his waste claim, Myers alleged that Linkenmeyer

---

[1] Under section 654B.1(7) a "nuisance" means "an action injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, including but not limited to nuisances defined in section 657.2, subsections 1 through 5, and 7." Iowa Code § 654B.1(7); *see also id.* § 657.2(4) (defining nuisance to include the "corrupting or rendering unwholesome or impure the water of any . . . pond . . . to the injury or prejudice of others").

"allowed waste on [Myers's] property," which deprived him "of his use of the land (pond)." Myers's claim for trespass similarly alleged Linkenmeyer "allowed manure unlawfully to enter on [Myers's] property, and disturbed [his] use, occupation, and enjoyment thereof." The factual allegations supporting each of these claims is the same as those for the nuisance claim—that Linkenmeyer caused manure runoff into Myers's pond. *See* Iowa Code § 657.2(4).

For these reasons, the district court was correct in concluding that section 654B.3(1)(a) applied to all of Myers's claims. *Cf. Gannon*, 772 N.W.2d at 262 (dismissing only the plaintiffs' nuisance claims for failure to mediate where defendants did not argue the other claims were disputes subject to section 654B.3). Myers was therefore required to request mediation with the farm mediation service and receive a mediation release before filing suit. *See* Iowa Code § 654B.3(1)(a); *Klinge*, 725 N.W.2d at 17.

The next question before us concerns the consequences of Myers's failure to file a mediation request and receive a mediation release. *See Klinge*, 725 N.W.2d at 17. Section 654B.3(1)(b) states that the "requirements of paragraph '*a*' are jurisdictional prerequisites to a person filing a civil action that initiates a civil proceeding to resolve a dispute subject to this chapter." Myers argues this provision does not require dismissal of his suit for lack of subject matter jurisdiction because in *Rutter v. Carroll's Foods of the Midwest, Inc.*, 50 F. Supp. 2d 876, 883 (N.D. Iowa 1999), the federal court denied a motion to dismiss for failure to obtain mediation releases, stayed the proceedings, and gave the plaintiffs "a brief period to cure the defects in the conditions precedent to their claims." Key to the court's decision, however, was its conclusion that obtaining a mediation release under

chapter 654B "is a 'condition precedent' to suit, not a jurisdictional prerequisite. As such, the defect of failing to obtain such a release does not affect . . . the subject matter jurisdiction of the court, but is instead curable after suit has been filed." *Rutter*, 50 F. Supp. 2d at 882–83.

In *Klinge*, our supreme court considered the continued viability of *Rutter* after the legislature added section 654B.3(1)(b) to chapter 654B in 2000. 725 N.W.2d at 17–18. Given the "timing of the amendment, the use of the federal court's term 'jurisdictional prerequisites,' and the introductory statement to the bill" mentioning a "1999 federal district court ruling," the court found it "obvious" that "the legislature intended to respond to *Rutter*" in enacting section 654B.3(1)(b). *Id.* As a result, *Klinge* held "the legislature intended obtaining a mediation release from the farm mediation service to be a prerequisite to subject matter jurisdiction." *Id.* at 18; *accord Schaefer v. Putnam*, 841 N.W.2d 68, 82 (Iowa 2013) ("[A] litigant's failure to mediate under section 654B.3(1) deprives the district court of subject matter jurisdiction to hear the claim."). So Myers's reliance on *Rutter* in support of his requested stay is misplaced, as is his argument that *Klinge* is limited to disputes involving care and feeding contracts for livestock, not nuisance claims. *See* Iowa Code § 654B.1(2)(a) (defining a dispute to also include a claim related to "a care and feeding contract"). Because there is no such limiting language in *Klinge* or section 654B.3(1)(b), we rejected the same argument in *Gannon*, 772 N.W.2d at 262, and do so again here.

In a final attempt to save his claims, Myers argues the district court should have granted his request to stay the proceedings under section 654B.3(1)(a) to determine whether he would "suffer irreparable harm" from the "time delay required

for the mediation." As we partially quoted earlier, section 654B.3(1)(a) provides that a "person shall not begin the proceeding until the person receives a mediation release or until the court determines after notice and hearing that . . . [t]he time delay required for the mediation would cause the person to suffer irreparable harm."[2] Myers notes that section 654B.3(1)(a) uses the phrase "shall not begin the proceeding" instead of "file," which he contends "contemplates the remedy of a [s]tay of [p]roceedings." But, as our supreme court in *Schaefer* held in interpreting the same language in the mandatory mediation provisions for farmer-creditor disputes in section 654A.6(1)(a), a civil proceeding begins with the filing of a petition. 841 N.W.2d at 78 (reasoning that under Iowa Rule of Civil Procedure 1.301(1), the "initiation of a civil action is thus achieved by filing a petition with a court").

Yet Myers argues that because section 654B.3(1)(a) requires a "notice and hearing" to determine whether the "time delay required for the mediation would cause . . . irreparable harm," the statute conflicts with the jurisdictional-prerequisite provision of section 654B.3(1)(b). He asks, "[H]ow can a party (Myers) ask for a court determination after notice and hearing under [c]hapter 654B.3[] if no petition or action is filed?" We need not answer this question because we agree with the district court that Myers would not suffer any irreparable harm from the "time delay for mediation."

---

[2] The statute permits another exception, not applicable here, if the "dispute involves a claim which has been brought as a class action." Iowa Code § 654B.3(1)(a)(2).

The "irreparable harm" identified by Myers is that if his suit is dismissed, it "would essentially be a dismissal with prejudice as the claims asserted in the [p]etition may be barred by the applicable statute of limitations." But as the district court said:

> While the term "irreparable harm" isn't included in the definitions section of Iowa Code Chapter 654B, the term clearly doesn't encompass harm that a plaintiff inflicts on himself by not leaving himself enough time to refile his lawsuit after he completes the farm mediation that should've been done before he filed his lawsuit. Any harm that Myers suffers due to the statute of limitations is due to his own actions or inactions.

Going a step further, the harm that Myers may suffer in being unable to refile his suit results not from a "time delay for mediation" but from Myers's failure to request mediation in the first place.

## IV. Conclusion

We conclude that section 654B.3(1)(a) applies to all of Myers's claims and, as a result, he needed to file a request for mediation with the farm mediation service and obtain a mediation release before filing suit. Because Myers failed to do so, the district court was correct in concluding that it lacked subject matter jurisdiction, denying Myers's motion for a stay, and dismissing the petition.

**AFFIRMED.**